IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:20-CV-59-FL

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GINA M. RAIMONDO, U.S. Secretary of | ) | |
| Commerce, in her official capacity; | ) | ORDER |
| RICHARD W. SPINRAD, Under Secretary | ) | |
| of Commerce for Oceans and Atmosphere, | ) | |
| in his official capacity; and the NATIONAL | ) | |
| OCEANIC AND ATMOSPHERIC | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This case is before the court on defendants' motion to dismiss for lack of jurisdiction (DE 11), and plaintiff's motion to vacate agency decision (DE 17). The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, defendants' motion is granted in part and denied in part, and plaintiff's motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action on August 26, 2020, under the Administrative Procedure Act, 5 U.S.C. § 551 et seq., seeking judicial review of defendants' decision (the "decision" or "defendants' decision") overruling plaintiff's objection to a seismic survey that non-party,

---

[1] The court constructively has amended the caption of this order to reflect substitution of individual defendants in their official capacities, where the original individual defendants "cease[d] to hold office while the action [was] pending," and "[t]he officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). The clerk is DIRECTED to amend the docket of this case to reflect substitution of these defendants.

WesternGeco, proposed to conduct in the Atlantic Ocean off of the North Carolina coastline (the "seismic survey"). Plaintiff seeks a declaration that defendants violated the Coastal Zone Management Act, 16 U.S.C. § 1451 et seq, and the Administrative Procedure Act, by issuing the decision; an order holding unlawful and setting aside the decision; and costs and fees.

Defendants filed the instant motion to dismiss for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), relying upon September 4, 2020, correspondence from WesternGeco to defendants withdrawing an application for a permit to conduct the seismic survey, and providing notice that it is no longer planning to conduct the seismic survey. Defendants also rely upon an order entered in case South Carolina Coastal Conservation League v. Ross, No. 2:18-CV-3326-RMG (D.S.C. Oct. 6, 2020), dismissing without prejudice that action as moot.

Plaintiff responded in opposition to the motion to dismiss, and filed the instant motion to vacate agency decision, on January 11, 2021. Plaintiff relies upon a complete copy of its objection to the seismic survey, which is referenced in the complaint. Defendants thereafter replied in support of their motion and responded in opposition to plaintiff's motion. Finally, plaintiff replied in support of its motion.

### STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Providing context to the challenged agency action in this case, the complaint first includes statutory and regulatory background, which the court incorporates herein in part for ease of reference.

A.    Statutory and Regulatory Background

The Outer Continental Shelf Lands Act allows the United States to grant "oil and gas lease[s] on submerged lands of the Outer Continental Shelf." 43 U.S.C. §§ 1331, 1337(a)(1). It also allows the Secretary of the Interior to "authorize[]" "any person" to "conduct geological and

geophysical explorations" on areas of the outer continental shelf that are not leased. 43 U.S.C. § 1340(a)(1).

The Department of the Interior's Bureau of Ocean Energy Management administers a regulatory program governing geological and geophysical exploration "on unleased lands" of the outer continental shelf. 30 C.F.R. § 551.2(a). Any person "must have a [Bureau of Ocean Energy Management]-approved permit to conduct [geological and geophysical] exploration . . . for oil, gas, or sulphur resources" on unleased lands of the outer continental shelf. Id. § 551.4(a). The seismic survey at issue in this case is proposed to occur on unleased lands of the outer continental shelf and therefore requires a permit from the Bureau of Ocean Energy Management.

The Coastal Zone Management Act allows each "coastal state" to adopt a "management program" "to guide public and private uses of lands and waters in the coastal zone" and to submit such program to the Secretary of Commerce "for review and approval." 16 U.S.C. § 1453(4), (12), § 1454. North Carolina's "coastal zone" extends three miles into the Atlantic Ocean. Id. § 1453(1); 43 U.S.C. § 1312.

After a state's management program has been approved, any applicant for a federal permit to conduct any activity affecting any land or water use or natural resource of the state's coastal zone must provide the state with a certification. The applicant must certify "that the proposed activity complies with the enforceable policies of the state's approved program and that such activity will be conducted in a manner consistent with the program." 16 U.S.C. § 1456(c)(3)(A).

As pertinent here, for a state to secure the right to require that a federal permit applicant submit a Coastal Zone Management Act consistency certification, the state must notify the permit applicant that its unlisted activity has reasonably foreseeable coastal effects and therefore is subject to the Coastal Zone Management Act consistency process. See 15 C.F.R. §§ 930.53(a)(2), 930.54.

Following the submission of a certification by a federal permit applicant, the state may notify the federal permitting agency whether "the state concurs with or objects to the applicant's certification." 16 U.S.C. § 1456(c)(3)(A).

If the state objects to a consistency certification for a federal permit, the permit applicant may "appeal" the objection to the Secretary of Commerce. 15 C.F.R. Part 930, Subpart H. According to the complaint, this is not an appeal in the traditional sense. The Coastal Zone Management Act does not task the Secretary with determining whether the State properly objected to the certification. Instead, the Secretary determines whether the State's objection should be overridden. See id. §§ 930.120 -.121.

One basis on which the Secretary may override a State's objection is a finding by the Secretary that "the activity is consistent with the objectives of" the Coastal Zone Management Act. 16 U.S.C. § 1456(c)(3)(A). In order for the Secretary to make this finding, the proposed activity must, inter alia, "further[] the national interest as articulated in § 302 or § 303 of the [Coastal Zone Management] Act, in a significant or substantial manner." 15 C.F.R. § 930.121.

If a federal permit applicant is required to submit a consistency certification, the federal permitting agency may not issue the permit over a State's objection unless the Secretary of Commerce overrides that objection. 16 U.S.C. § 1456(c)(3)(A). The Secretary delegated to National Oceanic and Atmospheric Administration the authority to perform functions prescribed in the Coastal Zone Management Act, including administering and deciding consistency appeals such as the one at issue in this case.

B.     Seismic Surveying

According to the complaint, seismic surveying is a technique for collecting data regarding oil and gas deposits beneath the bed of the ocean. To conduct a seismic survey, a vessel tows

4

dozens of airguns just below the water surface, which emit a blast roughly every ten to fifteen seconds, and the echoes thereof are recorded by listening devices.

The data generated by the blasts and echoes is analyzed to yield information about what oil and gas deposits, if any, might lie beneath the ocean floor. According to the complaint, the sounds emitted by seismic survey airguns are among the loudest that humans regularly introduce into the ocean and can propagate hundreds of miles through the water. Due to reverberation, noise levels allegedly remain elevated even between pulses over fifty miles from the survey vessel. While a survey is underway, there is allegedly no "quiet time" in the water over an expansive radius around the vessel. (Compl. ¶ 23). "A single [seismic] survey can continue for months at a time and operate day and night." (Id. ¶ 24).

C.    WesternGeco's Seismic Survey

In April 2014, WesternGeco applied to the Bureau of Ocean Energy Management for a permit to conduct its seismic survey in the Atlantic Ocean. According to the complaint, "WesternGeco proposes to conduct a two-dimensional survey using one vessel to tow an array of twenty-four airguns." (Id. ¶ 26). "Seismic operations are planned for approximately 208 days over a period of about a year." (Id.). The survey area would stretch from South Carolina's southern boundary to Virginia's northern boundary and include the entire length of North Carolina's coast. The blue polygon in the figure below, which is excerpted from the complaint, shows the areal extent of the survey.

5



(Id. ¶ 25).

The complaint alleges that a number of uses and resources of North Carolina's coastal zone would be adversely affected by the proposed seismic survey. "These uses and resources include commercial and recreational fishing, tourism, research and endangered species." (Id. ¶ 27). For example, according to the complaint, "the noise from airguns can affect marine life while species are in state waters even if the airguns never enter state waters." (Id. ¶ 28). In addition, "species may be affected by the noise emanating from airguns while in federal waters, and then return to state waters in an injured state, or fail to return at all due to impacts from the airguns." (Id. ¶ 29). Thus, according to the complaint, "seismic surveying will negatively affect North Carolina's commercial and recreational fisheries," as well as "threatened and endangered species," such as the right whale, loggerhead turtle, and other resources of the coastal zone. (Id. ¶¶ 34-40).

"In addition to the survey project proposed by WesternGeco in this case, four other companies . . . are also seeking permits to conduct seismic surveys of the Atlantic [outer

6

continental shelf] during the same period." (Compl. ¶ 41). "The surveys will continue for months—up to a year—and traverse multiple tracklines from less than twenty miles to hundreds of miles off the North Carolina coast." (Id.).

D.    Incidental Harassment Authorizations

According to the complaint, "[t]he National Marine Fisheries Service may authorize incidental (but not intentional) 'takes' [injuries, disturbances, or deaths of marine mammals] only upon making certain findings, including that the authorized activity will 'take' only 'small numbers' of marine mammals and will have no more than a 'negligible impact' on each marine mammal species or stock." (Id. ¶ 45 (quoting 16 U.S.C. § 1371(a)(5)(D)).

On November 30, 2018, the National Marine Fisheries Service issued "incidental harassment authorizations" to WesternGeco and other survey companies to conduct seismic surveys in the Atlantic outer continental shelf and to "take" various amounts of the marine mammals that will be affected by the surveys. (Id. ¶ 46). According to the complaint, "[t]he surveys can only be conducted with a valid" incidental harassment authorization, and the incidental harassment authorizations "expire on November 30, 2020." (Id.).

E.    Plaintiff's Objection to WesternGeco's Consistency Certification

On August 20, 2014, plaintiff requested approval to have WesternGeco's application be subject to consistency review by North Carolina. On November 18, 2014, defendants approved plaintiff's request, and WesternGeco submitted its consistency certification to plaintiff on March 12, 2019. After receiving public comment, holding a public hearing, soliciting and receiving input from expert researchers, consulting other North Carolina state agencies, and receiving further information from WesternGeco, plaintiff concluded that the proposed activity would be "inconsistent with the relevant enforceable policies of North Carolina's approved coastal

management program." (Id. ¶ 51). Therefore, plaintiff objected to WesternGeco's consistency certification.

WesternGeco filed a notice of appeal to defendants, and the parties submitted briefs and supporting materials, and defendants solicited input from other federal agencies.

F.     Defendants' Decision

On June 15, 2020, defendants issued their decision overruling plaintiff's objection. (See DE 1-1). In particular, the decision "overrides the State's objection to the proposed survey." (Id. at 44). [2]    As a result, "the State's objection to the proposed survey no longer operates as a bar under the [Coastal Zone Management Act] to federal agencies issuing, in accordance with all applicable law, licenses or permits necessary to conduct the proposed survey."  (Id.).

According to the complaint, to reach this decision, defendants committed several legal and factual errors that render it invalid, including allegedly failing to support adequately conclusions that 1) the seismic survey would further the national interest as articulated in the Coastal Zone Management Act in a significant and substantial manner; and 2) the seismic survey's adverse coastal effects would be minor, localized and temporary.

Additional facts pertinent to mootness will be discussed in the court's analysis.

**COURT'S DISCUSSION**

A.     Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart

---

[2]        Page numbers in citations to documents and briefs in the record other than the complaint specify the page number showing on the face of the document, if any, rather than the page number imposed by the court's case management and electronic case filing (CM/ECF) system.

8

from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where, as here, a defendant raises a "facial challenge[ ] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "In evaluating the sufficiency of a pleading, the "court accepts all well pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.      Analysis

The parties in this case agree that this case must be dismissed.  They dispute, however, the basis for dismissal and the conditions, if any, that must accompany it.  Defendants contend the case must be dismissed due to a lack of standing at its inception, and only in the alternative on the basis of mootness.  Plaintiff contends, by contrast, that dismissal due to lack of standing is unwarranted, and that dismissal based upon mootness must be accompanied by vacatur of the underlying agency decision.  Because defendants raise a threshold issue of standing, the court turns first to that issue.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998) (describing as "the threshold jurisdictional question: whether the [plaintiff] has standing to sue").

1.      Standing

"[T]o establish standing, a plaintiff must show (i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the

defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). Thus, "[a]t the pleading stage," the court analyzes factual allegations regarding injury under the standard for a motion to dismiss. Id. Standing is measured by "whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008).

"When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). "If he is, there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing or requiring the action will redress it." Id. at 561-62. In addition, "[s]tates are not normal litigants for the purposes of invoking federal jurisdiction." Massachusetts v. E.P.A., 549 U.S. 497, 518 (2007). As such, the United States Supreme Court has recognized that a state has standing "to assert its rights under federal law." Id. at 520 n.17.

Here, plaintiff has alleged sufficient facts to establish standing. Most critically, plaintiff is itself the sole "object of the action," here defendants' decision, which has already taken place and is being challenged in this suit. Lujan, 504 U.S. at 561. Plaintiff exercised its unique statutory right, as a state, to object to the proposed seismic survey, and defendants issued the subject decision overruling that objection. (Compl. ¶¶ 51, 54). Defendants' action, in a concrete and particularized manner, rendered without force plaintiff's objection to the seismic survey. (Id. ¶ 54). There is thus

10

"little question that the action . . . has caused [plaintiff] injury, and that a judgment preventing or requiring the action will redress it." Lujan, 504 U.S. at 561-62. In addition, plaintiff has standing to assert its rights under federal law, as the sole actor with a statutory right to object to the seismic survey. Massachusetts, 549 U.S. at 518.

Furthermore, at the time of commencement of this case, defendants' decision created a risk of imminent injury, through the seismic survey itself. This is because defendants' decision "ended [plaintiff's] opportunity to have more stringent requirements imposed (or the Project vetoed entirely)." Sierra Club v. State Water Control Bd., 898 F.3d 383, 401 (4th Cir. 2018). At the time of the filing of the complaint, the last alleged hurdle to issuance of the Bureau of Ocean Energy Management permit had passed. (Compl. ¶¶ 12, 17, 19, 54; Compl. Ex. 1 (DE 1-1) at 1, 44). WesternGeco had already obtained incidental harassment authorizations from the National Marine Fisheries Service that allowed it to "take" marine mammals through its survey, which were still valid and set to expire over 90 days later on November 30, 2020. (Compl. ¶ 46). And, it was reasonable to infer that, during the time remaining under its incidental harassment authorization, WesternGeco would conduct the seismic survey, or at least part of it.

Defendants nonetheless argue that plaintiff cannot meet the injury-in-fact element of standing for several reasons, which are unavailing. Defendants argue, for example, that plaintiff cannot assert that the decision, in itself, caused injury because plaintiff did not plead this theory of standing in the complaint. (See Reply (DE 19) at 4). Defendants suggest that plaintiff alleges only injuries that may flow from the seismic survey, in the form of injuries to state fisheries and commercial interests. The sufficiency of the complaint, however, is determined not by whether plaintiff has asserted one legal theory of relief over another, but rather whether the facts alleged support standing. See Lujan, 504 U.S. at 561; Nemet Chevrolet, 591 F.3d at 255. Here, the

complaint contains ample factual allegations that plaintiff was injured, directly, as the object of defendants' challenged decision. (Compl. ¶¶ 12, 17, 19, 51, 54; Compl. Ex. 1 (DE 1-1) at 1, 44). Moreover, the complaint does not itself assert any legal assertions regarding plaintiff's standing, or limit plaintiff to one theory of standing over another. (See id.). Accordingly, defendants' argument is without merit.

Defendants also argue that plaintiff fails to allege an imminent injury, because WesternGeco did not have enough time to complete its survey as proposed. Defendants point to the allegation in the complaint that "[s]eismic operations are planned for approximately 208 days over a period of about a year." (Compl. ¶ 26; see Reply (DE 19) at 6). In so arguing, however, defendants draw inferences from the allegations in the complaint in their favor, not plaintiff's. In addition to the foregoing allegation, the complaint alleges that the seismic surveys proposed by WesternGeco and four other companies "will continue for months – up to a year." (Compl. ¶ 41). Similarly, the complaint alleges that a "single survey can continue for months at a time and operate day and night." (Id ¶ 24) (emphasis added). Thus, viewed in the light most favorable to plaintiff, while WesternGeco planned to conduct operations for 208 days, it is reasonable to infer that it could conduct a seismic survey for part of that time, during the 90 days remaining under its incidental harassment authorization. (Id. ¶ 46).

Defendants also argue that whether plaintiff is "the object of the government action" is pertinent only to the "causation and redressability prongs" of the standing analysis, and not the "injury prong." (Reply at 3-4). The Supreme Court, however, has not so limited its analysis of standing. Rather it stated in Lujan that, if the plaintiff is the object of the government action, then "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." 504 U.S. at 561-62 (emphasis added).

12

This statement by its plain terms encompasses a determination of an "injury." Id. at 562. Indeed, the Supreme Court in Lujan addressed whether injury in fact existed in that case. E.g., Lujan, 504 U.S. at 568 ("Besides failing to show injury, respondents failed to demonstrate redressability.") (emphasis added). The Supreme Court also stated without qualification, in Massachusetts, that a state "has standing" "to assert its rights under federal law." 549 U.S. at 520 n. 17.

Notably, defendants do not cite any case where a plaintiff who was the sole and direct object of a challenged government decision lacked standing to sue, much less one in which a plaintiff challenging a government decision against it was a state. In this manner cases cited by defendants are inapposite. For example, defendants cite to Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) for the proposition that "threatened injury must be certainly impending to constitute injury in fact and that allegations of possible future injury are not sufficient." (Defs' Mem. (DE 13) at 12) (emphasis in original). In Clapper, however, the plaintiffs were "United States persons whose work, they allege, requires them to engage in sensitive international communications with individuals who they believe are likely targets of surveillance under" the Foreign Intelligence Surveillance Act. 568 U.S. at 401. They asserted injury on the basis of the "likelihood that their communications will be acquired under [that Act] at some point in the future." Id. (emphasis added). Clapper is inapposite because, unlike in the instant case, the plaintiffs were not challenging a government decision directed at them that had already taken place. 568 U.S. at 401. Rather, they were challenging a potential government decision that could take place in the future. Id. This distinction is critical to the standing analysis. Lujan, 504 U.S. at 561-62; Cf. California v. Texas, 141 S. Ct. 2104, 2115 (2021) (finding that plaintiff was not the

"object of a challenged [g]overnment action" because "[h]ere, there is no action—actual or threatened—whatsoever," only a challenge to a statute in the abstract).[3]

In sum, as the sole and direct object of the government decision challenged in this suit, defendants' decision caused injury to plaintiff, in its unique position as a state. In addition, the decision allegedly created an imminent risk of injury from the seismic survey. Accordingly, the allegations in the complaint are sufficient to create a plausible inference of an injury in fact, caused by defendant, that is redressable by judicial review of defendants' decision. Therefore, defendants' motion to dismiss must be denied in that part premised upon a lack of standing.

2.      Mootness and Vacatur

As noted previously, the parties agree that the case now is moot. "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 72 (2013). Here WesternGeco has withdrawn its permit application and stated to defendants that it "is no longer planning to conduct the [seismic] survey." (DE 13-1 and DE 13-2). Thus, because the seismic survey to which plaintiff objected is no longer proceeding forward, defendants' decision overruling that objection and the instant action for judicial review of the same is moot.

Where the case must be dismissed as moot, not due to any action on the part of plaintiff, this raises a disputed issue as to whether the underlying decision must be vacated. The Supreme

---

[3]      Defendants also assert that the case is not ripe "for the same reason that the State has failed to adequately plead standing." (Def's Mem. at 15). Where defendants' standing arguments are unavailing, their ripeness arguments also are without merit. Defendants fail to take adequately in account that defendants already issued the decision directly against plaintiff that is subject of the instant lawsuit, allegedly extinguishing plaintiff's ability to further object to the seismic surveys. (DE 1-1 at 44). Thus, this case is unlike cases addressing ripeness where, for example, "an injury is contingent upon a decision to be made by a third party that has not yet acted," Doe v. Virginia Dep't of State Police, 713 F.3d 745, 754 (4th Cir. 2013), or the government's challenged approval of a planned action "does not give anyone a legal right . . . , nor does it abolish anyone's legal authority to object." Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733 (1998).

14

Court has recognized that it "has been the long-standing practice of this Court in civil cases" to vacate an underlying district court's challenged decision on appeal, "when appellate review of the judgment incorporating that resolution, otherwise available as of right, fails because of intervening mootness." A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 329 & n. 11 (1961) (citing United States v. Munsingwear, Inc., 340 U.S. 36 (1950) ("Munsingwear"). In Mechling, the Supreme Court extended this principle to vacatur of administrative decisions upon judicial review, stating "[w]e think the principle enunciated in Munsingwear at least equally applicable to unreviewed administrative orders, and we adopt its procedure here." Id. at 329. There, the court held, "[t]he District Court should have vacated the order which it declined to review." Id.

The Supreme Court reiterated the general principles of application of this doctrine of vacatur, in the context of review of a district court judgment, in U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 24 (1994). There, the court recognized that "vacatur must be decreed for those judgments whose review is . . . prevented through happenstance—that is to say, where a controversy presented for review has become moot due to circumstances unattributable to any of the parties." Id. at 23 (quotations omitted). The court observed that "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." Id. at 24. Referring to the "equitable tradition of vacatur," the court noted that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." Id. at 25. "From the beginning we have disposed of moot cases in the manner most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot." Id. at 24.

Based on the foregoing principles, the court must in this instance vacate defendants' decision, review of which has "become moot due to circumstances unattributable to any of the parties." U.S. Bancorp, 513 U.S. at 23. The "principal condition" determining vacatur here is the fact that the party seeking relief from defendants' decision, plaintiff, did not cause the mootness by any voluntary action or settlement on its part. Id. at 24. In addition, vacatur is supported by equitable considerations in this case. The "nature and character of the conditions which have caused the case to become moot," id., include circumstances in which the objection under review in this case was brought about in the first place solely by WesternGeco's proposed seismic survey. (See Plaintiff's Objection (DE 16-1) at 1-10). WesternGeco, after the instant action for judicial review was filed, engaged in correspondence with defendants and the Bureau of Ocean Energy Management, rendering the decision moot. (See DE 13-1 and DE 13-2).

Moreover, although defendants' decision addresses only plaintiff's objection to WesternGeco's survey, it is a lengthy 44-page decision that includes detailed findings and determinations applicable to seismic surveys in general. (See, e.g., DE 1-1 at 12, 16-23, 27-28, 37-41). Defendants rely in their decision upon citation to prior decisions on objections to Coastal Zone Management Act consistency determinations, as here. (See, e.g., DE 1-1 at 12-14 nn. 22-24; 21 n.31; and 43 n. 65). Thus, it is likely defendants will seek to rely upon the instant decision as precedent for future decisions of a similar nature. Accordingly, as "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance," plaintiff here "ought not in fairness be forced to acquiesce in" defendants' decision. U.S. Bancorp, 513 U.S. at 24. Further, the "public interest" supports vacatur, id. at 26, given the importance of defendants' decision to both the state and the nation, as well as the importance of addressing any future

permitting objections or appeals with a clean slate, as defendants recognize. (Defs' Mem. (DE 13) at 24). Thus, vacatur of defendants' decision is required by the circumstances of this case.

Defendants argue, nonetheless, that vacatur is not warranted in this case because defendants' decision "does not have any lingering effect like that present in Mechling." (Def's Mem. (DE 13 at 23). Mechling, however, does not state that an underlying agency decision must have a "lingering effect" before vacatur is warranted. See Mechling, 368 U.S. at 325-331. Indeed, there, the court confirmed that the order under review was "presently devoid of practical effect, inasmuch as the . . . application to which it relates has been withdrawn," which is consistent with both a mootness determination and vacatur, in Mechling and in the instant case. Id. at 328 (emphasis added). In any event, it is likely that defendants' decision here could have a lingering effect without vacatur, in that defendants readily cited to past decisions on objections as authority for their instant decision. (See, e.g., DE 1-1 at 12-14 nn. 22-24; 21 n.31; and 43 n. 65).

Defendants cite to Westmoreland v. Nat'l Transp. Safety Bd., 833 F.2d 1461, 1463 (11th Cir. 1987), as an example of a case in which the court declined to order vacatur where there "was an insufficient showing that the administrative order will have any real continuing effect." Westmoreland, however, is instructively distinguishable. There, an individual aviation safety inspector petitioned for review of a National Transportation Safety Board order (the "administrative order") temporarily suspending her commercial pilot certificate until such time as she passed a flight reexamination. Prior to commencement of the judicial action, however, the plaintiff had taken and passed her flight reexamination and recovered her commercial pilot privileges. As such, the court determined that the action for review of the administrative order was moot and that it "would be incongruous for this Court to . . . vacate the order." Id.

17

Westmoreland is unhelpful for defendants in multiple respects. First, Westmoreland involved an individual plaintiff who sought review of an "order of suspension [that] lapsed as soon as [she] successfully passed her reexamination." Id. In this respect, in contrast to the instant case, the mootness in Westmoreland was caused in part by voluntary action of the plaintiff who sought review, which voluntary action is the "[t]he principal condition to which [the Supreme Court] ha[s] looked" in determining whether vacatur is warranted. U.S. Bancorp, 513 U.S. at 24. Second, Westmoreland involved an administrative order regarding an individual's certificate pertinent to her employment, not an appeal by a state regarding activities impacting its entire coastal zone, and there was no mention that such an administrative order could have precedential value in future appeal decisions, as here. Third, consistent with the court's decision here, the Westmoreland court confirmed that "[n]ormally when intervening mootness stands in the way of appellate review, the appellate court vacates the unreviewed court judgment to prevent its having preclusive effect in subsequent litigation," and "[t]his doctrine also extends to unreviewed administrative orders." Id. at 1463 (emphasis added). In sum, Westmoreland is inapposite, and the normally applicable rule applies here.

Defendants also cite to Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers, 781 F.3d 1271 (11th Cir. 2015), for the proposition that a plaintiff is not automatically entitled to vacatur, even when prevailing on the merits of its case. There, however, the court of appeals ordered a remand to the agency for further determinations, "in the face of [an] incomplete record." Id. at 1289. "The problem we now face," the court held, "is that we can't evaluate whether the [defendant's] . . . determinations were arbitrary and capricious on this record," where the defendant agency had stated that it "did not take into account" certain information in its decision. Id. at 1288.

18

<u>Black Warrior</u> thus did not involve consideration of vacatur under circumstances, as here, where an agency decision was mooted by action of a third party.

Furthermore, although the parties do not cite, and this court has not identified, any published opinion by the United States Court of Appeals for the Fourth Circuit addressing vacatur of an administrative decision where judicial review of that decision is dismissed as moot, <u>Black Warrior</u> confirmed "that vacatur <u>is the ordinary [Administrative Procedure Act] remedy</u>." <u>Id.</u> at 1290 (emphasis added). The United States Court of Appeals for the District of Columbia Circuit, likewise, has recognized that "if the party who lost below did not cause the case to become moot, that is, if happenstance or the actions of the prevailing party ended the controversy, vacatur remains <u>the standard form of relief.</u>" <u>N. California Power Agency v. Nuclear Regul. Comm'n</u>, 393 F.3d 223, 225 (D.C. Cir. 2004) (emphasis added); <u>see also</u> <u>Am. Fam. Life Assur. Co. of Columbus v. F.C.C.</u>, 129 F.3d 625, 630 (D.C. Cir. 1997) ("[W]e have, as a matter of course, vacated agency orders in cases that have become moot by the time of judicial review."); <u>Valspar Sourcing, Inc. v. PPG Indus., Inc.</u>, 780 F. App'x 917, 921 (Fed. Cir. 2019) ("This court has . . . repeatedly relied on <u>Munsingwear</u> to vacate agency actions.").[4]

In sum, dismissal of the instant action as moot, and vacatur of defendants' decision, is warranted under the circumstances of this case. Accordingly, defendants' motion to dismiss is granted in this part, and plaintiff's motion to vacate is granted.

---

[4] While the court agrees with plaintiff that vacatur of defendants' decision is warranted, the court does not adopt plaintiff's proposed form of order for that vacatur, which states "the Defendants are further ordered to indicate clearly on their Appeal Decision website that the Decision has been vacated by removing references to this Decision or qualifying references with a notation that the Decision was vacated, and by taking such other steps as may be reasonably necessary to apprise the public that the Decision had been vacated." (DE 17-1 at 2). It is consistent with this court's jurisdiction where the case now is moot to order solely that defendants' decision "is vacated." <u>N. California Power Agency</u>, 393 F.3d at 226; <u>Am. Fam. Life Assur. Co.</u>, 129 F.3d at 630.

**CONCLUSION**

Based on the foregoing, defendants' motion to dismiss (DE 11) is GRANTED IN PART and DENIED IN PART, and plaintiff's motion to vacate (DE 17) is GRANTED. Defendants' motion is denied in that part seeking dismissal for lack of standing, and it is granted in that part seeking dismissal on the basis of mootness. This action is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. Defendants' decision, as defined herein, is VACATED. The clerk is DIRECTED to amend the docket of this case to reflect substitution of defendants as set forth in the caption of this order, and to close this case.

SO ORDERED, this the 20th day of September, 2021.

LOUISE W. FLANAGAN
United States District Judge